**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

| | |
|---|---|
| AMANDA MCCAULEY, Individually and for Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>QUEST DIAGNOSTICS INCORPORATED,<br><br>    Defendant. | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Amanda McCauley (McCauley) brings this class and collective action to recover unpaid wages and other damages from Quest Diagnostics Incorporated (Quest).

2. Quest employed McCauley as one of its Hourly Employees (defined below) in Virginia.

3. McCauley and the other Hourly Employees regularly work more than 40 hours a workweek.

4. Quest pays them by the hour.

5. But Quest does not pay McCauley and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 in a workweek.

6. Instead, Quest pays McCauley and the other Hourly Employees non-discretionary bonuses that it fails to include in their regular rates of pay for overtime purposes (Quest's "bonus pay scheme").

7. Quest's bonus pay scheme violates the Fair Labor Standards Act (FLSA) and Virginia Overtime Wage Act (VOWA) by failing to compensate McCauley and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

10. This Court has general personal jurisdiction over Quest because it maintains its principal place of business in New Jersey.

11. Venue is proper because Quest maintains its principal place of business in Secaucus, New Jersey, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

12. Quest employed McCauley as a medical technologist in Virginia from approximately September 2022 through July 2023.

13. Throughout her employment, Quest paid McCauley under its bonus pay scheme.

14. McCauley's written consent is attached as **Exhibit 1**.

15. McCauley brings this class and collective action on behalf of herself, and other similarly situated Quest employees paid under its bonus pay scheme.

16. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Quest employees who were paid a bonus not included in their regular rate of pay during the last three years through final resolution of this action (the "FLSA Collective Members").**

17. The putative VOWA class of similarly situated employees is defined as:

> **All hourly Quest employees who worked in Virginia who were paid a bonus not included in their regular rate of pay during the last three years through final resolution of this action (the "Virginia Class Members").**

18. The FLSA Collective Members and the Virginia Class Members are collectively referred to as the "Hourly Employees."

19. Quest is a Delaware corporation headquartered in Secaucus, New Jersey.

20. Quest may be served with process through its registered agent: **Corporation Service Company, 830 Bear Tavern Road, West Trenton, New Jersey 08628**.

### FLSA COVERAGE

21. At all relevant times, Quest was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

22. At all relevant times, Quest was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

23. At all relevant times, Quest was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and medical equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

24. At all relevant times, Quest had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

25. At all relevant times, McCauley and the other Hourly Employees were Quest's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

26. At all relevant times, McCauley and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

27. Quest touts that it "serves 1 in 3 adult Americans and half the physicians and hospitals in the US" through more than 2,250 testing "locations across the United States" operated by its "nearly 50,000 employees."[1]

28. To meet its business objectives, Quest employs workers, including McCauley and the other Hourly Employees, to operate the medical testing equipment in its facilities.

29. For example, Quest employed McCauley as a medical technologist in and around Rocky Mount, Virginia from approximately September 2022 through July 2023.

30. As a medical technologist, McCauley's primary job duties included collecting and preparing diagnostic samples, operating lab equipment, performing tests, analyzing lab results, and maintaining quality control.

---

[1] https://questdiagnostics.com./ *and* https://www.questdiagnostics.com/our-company/about-us (last visited June 17, 2025).

31. Throughout her employment, McCauley regularly worked more than 40 hours in a workweek.

32. Indeed, McCauley typically worked approximately 8 to 10 hours a day and 5 to 6 days a week "on the clock" (40 to 60 hours a workweek).

33. Quest paid McCauley approximately $35.19 an hour.

34. Likewise, the other Hourly Employees typically work approximately 8 to 12 hours a day and 5 to 6 days a week "on the clock" (40 to 60 hours a workweek).

35. McCauley and the other Hourly Employees are required to report their "on the clock" hours worked via Quest's designated timekeeping system.

36. Quest requires McCauley and the Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

37. At the end of each pay period, McCauley and the Hourly Employees receive wages from Quest that are determined by common systems and methods that Quest selects and controls.

38. But Quest does not pay McCauley and the other Hourly Employees at the required premium overtime rates for all hours worked in excess of 40 in a workweek.

39. Instead, Quest pays McCauley and the other Hourly Employees under its bonus pay scheme.

40. Specifically, Quest agrees to pay and subsequently pays McCauley and the other Hourly Employees non-discretionary bonuses, including sign on bonuses, that it fails to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

41. For example, Quest agreed to pay McCauley a $5,000 sign on bonus prior to her beginning employment with Quest, with the first $2,500 to be paid for completing 3 months of employment and the final $2,500 paid for completing 6 months of employment.

42. But Quest failed to include this sign on bonus in McCauley's regular rate of pay for overtime purposes, as demonstrated by her July 7, 2023 paystub:

| Earnings | Hours Current | Hours YTD | Current | Year to Date |
|---|---|---|---|---|
| Regular Hours Pay | 80.00 | 1013.80 | 2,815.20 | 35,383.82 |
| Sign On Bonus | | | 2,500.00 | 5,000.00 |
| Over Time Hours Pay at Base Rate | 2.10 | 14.20 | 73.90 | 495.70 |
| Over Time Hours Pay at Premium Rate | 1.30 | 14.20 | 36.95 | 253.07 |
| | 0.80 | 14.20 | | |
| Imputed Group Term Life* | | | 4.15 | 57.32 |
| Holiday | | | 0.00 | 833.52 |
| Shift Differential 10pct | | | 0.00 | 657.91 |
| Annual Incentive Plan | | | 0.00 | 533.30 |
| Weekend Differential 10pct | | | 0.00 | 410.58 |
| Holiday Worked Hours Pay at Premium | | | 0.00 | 354.07 |
| Shift Differential 15pct | | | 0.00 | 176.58 |
| Recognition Quest NE | | | 0.00 | 30.97 |
| Total Earnings | | | 5,430.20 | 44,241.83 |
| Absence Earnings | | | Current | Year to Date |
| PTO Payment | | | 0.00 | 1,869.11 |
| Total Absence Earnings | | | .00 | 1,869.11 |

*Imputed Earnings: Amount shown for taxation purposes only
**Nonpayroll Payment: Payment not part of Gross Earnings

| Hours Pay Type | Start Date | End Date | Quantity | Actual Rate | Amount |
|---|---|---|---|---|---|
| Over Time Hours Pay at Base Rate*** | | | 2.10 | 35.19 | 73.90 |
| Over Time Hours Pay at Premium Rate | | | 1.30 | 17.60 | 22.87 |
| Over Time Hours Pay at Premium Rate | | | 0.80 | 17.60 | 14.08 |
| Regular Hours Pay*** | | | 80.00 | 35.19 | 2,815.20 |
| *** Hours Worked | | | | Total Amount | 2,926.05 |

Page: 2 of 2

Quest Diagnostics

43. Thus, under its bonus pay scheme, Quest does not pay McCauley and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek, in violation of the FLSA and VOWA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

44. McCauley brings her claims as a class and collective action on behalf of herself and the other Hourly Employees.

45. Like McCauley, the other Hourly Employees are victimized by Quest's bonus pay scheme.

46. Other Hourly Employees worked with McCauley and indicated they were paid in the same or similar manner under Quest's bonus pay scheme.

47. Based on her experience with Quest, McCauley is aware Quest's bonus pay scheme was imposed on other Hourly Employees.

48. The Hourly Employees are similarly situated in the most relevant respects.

49. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

50. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

51. Rather, Quest's bonus pay scheme renders McCauley and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 in a workweek.

52. Quest's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

53. Quest's records also show it paid McCauley and the other Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

54. The back wages owed to McCauley and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

55. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Quest's records, and there is no detraction from the common nucleus of liability facts.

56. Therefore, the issue of damages does not preclude class or collective treatment.

57. McCauley's experiences are therefore typical of the experiences of the other Hourly Employees.

58. McCauley has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

59. Like each Hourly Employee, McCauley has an interest in obtaining the unpaid wages owed under federal and Virginia law.

60. McCauley and her counsel will fairly and adequately protect the interests of the Hourly Employees.

61. McCauley retained counsel with significant experience in handling complex class and collective action litigation.

62. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Quest will reap the unjust benefits of violating the FLSA and VOWA.

63. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

64. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Quest.

65. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

66. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

67. Among the common questions of law and fact are:

      a.    Whether Quest paid the Hourly Employees non-discretionary bonuses;

      b.    Whether Quest failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

      c.    Whether Quest failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

      d.    Whether Quest's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

      e.    Whether Quest violations were willful.

68. As part of its regular business practices, Quest intentionally, willfully, and repeatedly violated the FLSA with respect to McCauley and the other Hourly Employees.

69. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

70. The Hourly Employees are known to Quest, are readily identifiable, and can be located through Quest's business and personnel records.

## QUEST'S VIOLATIONS WERE WILLFUL

71. Quest knew it employed McCauley and the other Hourly Employees.

72. Quest knew it was subject to the FLSA's and VOWA's overtime provisions.

73. Quest knew the FLSA and VOWA required it to pay non-exempt employees, including McCauley and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

74. Quest knew McCauley and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Quest's timekeeping system.

75. Quest knew McCauley and the other Hourly Employees were non-exempt employees entitled to overtime pay.

76. Quest knew it paid McCauley and the other Hourly Employees non-discretionary bonuses.

77. Quest knew it was required to include these non-discretionary bonuses in their regular rates of pay.

78. Quest knew these non-discretionary bonuses were not included in McCauley's and the other Hourly Employees' regular rates of pay for overtime purposes.

79. And Quest knew the FLSA and VOWA require it to pay McCauley and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 hours a workweek.

80. Quest's failure to pay McCauley and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

81. Indeed, Quest has previously been sued on multiple occasions for failing to pay required overtime wages under the FLSA and analogous state laws. *See*, *e.g.*, *Ford v. Quest Diagnostics Incorporated*, 1:24-cv-03160-DG-JRC (E.D.N.Y.); *Oxman v. Quest Diagnostics Incorporated*, 2:24-cv-05395-LDW (D. N.J.); *Pope v. Quest Diagnostics Incorporated*, 4:23-cv-00080-JKW-RJK (E.D. Va.); *Vecchio, et al. v. Quest Diagnostics, Inc., et al.*, Case No. 1:16-cv-05165-ER-JW (S.D.N.Y.).

82. Quest knowingly, willfully, and/or in reckless disregard of the FLSA and Virginia law carried out its unlawful bonus pay scheme that deprived McCauley and the other Hourly Employees of overtime wages of at least 1.5 times their regular

rates of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA and Virginia law.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

83. McCauley brings her FLSA claim as a collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

84. Quest violated, and is violating, the FLSA by employing non-exempt employees such as McCauley and the other Hourly Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 in a workweek.

85. Quest's unlawful conduct harmed McCauley and the other Hourly Employees by depriving them of the overtime wages they are owed.

86. Accordingly, Quest owes McCauley and the other Hourly Employees the difference between the wages actually paid and the required overtime wages actually earned.

87. Because Quest knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Quest owes McCauley and the other Hourly Employees these wages for at least the past 3 years.

88. Quest is also liable to McCauley and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

89. Finally, McCauley and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE VOWA
### (VIRGINIA CLASS)

90. McCauley brings her VOWA overtime claim on behalf of herself and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

91. Quest's conduct violates the VOWA. *See* VA. CODE § 40.1-29.2.

92. At all relevant times, Quest was subject to the VOWA because Quest was (and is) an "employer" within the meaning of the VOWA.

93. At all relevant times, Quest employed McCauley and the other Virginia Class Members as its covered "employees" within the meaning of the VOWA.

94. McCauley and the other Virginia Class Members are non-exempt employees entitled to overtime wages under the VOWA.

95. The VOWA requires employers, like Quest, to pay non-exempt employees, including McCauley and the other Virginia Class Members, overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. VA. CODE § 40.1-29.2.

96. Quest violated, and is violating, the VOWA by failing to pay McCauley and the other Virginia Class Members overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked over 40 in a workweek.

97. Quest's unlawful conduct harmed McCauley and the other Virginia Class Members by depriving them of the overtime wages they are owed.

98. Accordingly, Quest owes McCauley and the other Virginia Class Members overtime wages of at least 1.5 times their regular rates for all hours worked over 40 in a workweek, plus an additional amount as liquidated damages. VA. CODE §§ 40.1-29(J) and 40.1-29.2.

99. Because Quest "knowingly" failed to pay McCauley and the other Virginia Class Members required overtime wages for all their overtime hours worked at the required rate—based on all remuneration—Quest owes these employees treble damages in an amount equal to three times their unpaid overtime wages for the period July 1, 2021 through June 30, 2022 during which the then in-effect iteration of VOWA allowed for same. VA. CODE § 40.1-29(J).

100. Finally, McCauley and the other Virginia Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. Va. Code § 40.1-29(J).

## JURY DEMAND

101. McCauley demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, McCauley, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order certifying this action as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing McCauley and her counsel to represent the interests of the Virginia Class Members;

d. An Order finding Quest liable to McCauley and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Quest liable to McCauley and the other Virginia Class Members for all their unpaid overtime wages owed under the VOWA, plus liquidated damages, and treble damages;

f.    A Judgment against Quest awarding McCauley and the other Hourly Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA and/or VOWA;

g.    An Order awarding attorneys' fees, costs, and expenses to the Hourly Employees;

h.    An Order awarding pre- and post-judgement interest at the highest applicable rates; and

i.    Such other and further relief as may be necessary and appropriate.

Dated: June 27, 2025

Respectfully submitted,

**BERGER MONTAGUE PC**

By: */s/ Camille Fundora Rodriguez*
Camille Fundora Rodriguez
NJ No. 017642011
1818 Market Street, Suite 3600
Philadelphia, PA 19103
215-875-4635 – Telephone
215-875-4604 – Facsimile
crodriguez@bergermontague.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:   (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:   (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR MCCAULEY & THE HOURLY EMPLOYEES**